UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TMT CO. LTD., <br><br> Plaintiff, <br><br> vs, <br><br> JPMORGAN CHASE BANK, <br><br> Defendant | Civ. No. 1:16-cv-08757-VM |

**CORRECTED MOTION TO EXPEDITE LETTER OF REQUEST
TO OBTAINING EVIDENCE UNDER THE HAGUE CONVENTION**

Plaintiff TMT Co. Ltd., by and through its attorneys and pursuant to Federal Rule of Civil Procedure 26(d), hereby moves the Court for a Letter of Request, in the form attached hereto as Exhibit A, to obtain evidence under the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention') from non-parties Royal Bank of Scotland, plc, and its employee Robert Blowes, who are located in Great Britain, on an expedited basis before the discovery conference required by Rule 26(f) takes place. As shown below, good cause exists for these expedited evidentiary proceedings. Plaintiff's counsel has been informed by Defendant's counsel that Defendant takes no position on this motion.[1]

Rule 26(d) provides that a "party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" unless allowed to do so by stipulation or by order of the Court. Fed.R.Civ.P. 26(d). *Next Phase Distrib., Inc. v. Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y 2012) (citing Fed.R.Civ.P. 26(d)) (party may obtain expedited discovery before

---

[1] TMT Co. has extended the time for JPMorgan to respond to the Complaint during the pendency of this motion.

Rule 26(f) conference when authorized by Court order).

In deciding whether to permit discovery before the Rule 26(f) conference, courts in the Southern District "have applied a 'flexible standard of reasonableness and good cause' in determining whether to grant a party's expedited discovery request." *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (citing Fed.R.Civ.P. 26(d)) (quoting *Ayyash v. Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005) (Lynch, J.); *Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (Chin, J.), and 8A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2046.1 (3d ed. 2011)).

Good cause exists for the expedited proceedings TMT Co. seeks. The principal issue in this case is whether TMT Co. is entitled to a return of $10,860,472.42 it had on deposit with non-party Royal Bank of Scotland ("RBS") beginning in 2007, which RBS apparently transferred to JPMorgan on its own initiative without TMT Co.'s instruction or consent. *See* Complaint, ¶ 1 (a true and correct copy of which is attached hereto as Exhibit B). Oddly, after a series of inquiries from Plaintiff's counsel, ***neither RBS nor JPMorgan has been able to locate the funds or even identify the account or accounts into which the funds were transferred***. *Id.* at ¶¶ 22-24. Based upon written confirmations sent by RBS, Plaintiff believes those missing funds are being held by JPMorgan.

TMT Co. opened an account with RBS in London in 2007, identified as Account Identifier/Number TMTCO-USD1 (the "TMTCO Account"), and deposited funds into that account. Comp. ¶¶ 6-7. Thereafter, TMT Co. received written notice from RBS of six transfers from the TMTCO Account to JPMorgan from 2007 to 2009, totaling $10,860,472.42. *First*, on or about July 12, 2007, RBS notified TMT Co. that it transferred the sum of $5,000,000.00 from the TMTCO Account to JPMorgan by wire transfer for the benefit of TMT Co. Id. at ¶ 7. As set

2

forth in the written confirmation that RBS sent to TMT Co., the funds were transferred into an account at JPMorgan identified by RBS as "Beneficiary account number: CHMANEK USDTCM." *Id*. *Second*, on or about September 19, 2007, RBS notified TMT Co. that it transferred the sum of $250,000.00 from the TMTCO Account to JPMorgan, again for the benefit of TMT Co. *Id*. at ¶ 9. True and correct copies of the confirmations for these two transfers are attached hereto as Exhibit C. According to the written confirmation of the transfer that RBS sent to TMT Co., the funds were again transferred into the "CHMANEK USDTCM" account. *Id*. TMT Co. did not initiate, request, or authorize either transfer. *Id*. at ¶ 8.

*Third*, on or about February 9, 2009, RBS notified TMT Co. that it transferred the sum of $1,995,587.37 from the TMTCO Account to its own account at JPMorgan via Royworld Express, a proprietary online banking portal operated by RBS similar to Western Union. Comp. ¶ 13. *Fourth*, on or about February 12, 2009, RBS notified TMT Co. that it transferred the sum of $1,458,302.67 from the TMTCO Account to its own account at JPMorgan via Royworld Express. *Id*. at ¶ 15. *Fifth*, on or about March 9, 2009, RBS notified TMT Co. that it transferred the sum of $1,456,592.90 from the TMTCO Account to its own account at JPMorgan via Royworld Express. *Id*. at ¶ 17. And *sixth*, on or about March 24, 2009, RBS RBS notified TMT Co. that it transferred the sum of $699,989.48 from the TMTCO Account to its own account at JPMorgan via Royworld Express. *Id*. at 19. TMT Co. did not initiate, request, or authorize either of those transfers. *Id*. at ¶¶ 14, 16, 18 & 20. True and correct copies of the confirmations for the Royworld transfers are attached hereto as Exhibit D.

TMT Co. has not accessed any of the funds purportedly transferred by RBS to JPMorgan since 2007. In late 2016, however, TMT Co. sought access to those funds. After a series of communications with Plaintiff's counsel, RBS (through its subsidiary RBS USA) now claims to

have no knowledge of the transfers and claims it cannot identify the account that it had designated as "CHMANEK USDTCM" in the two written confirmations it provided to TMT Co. in 2007.[2]  Comp. ¶ 24.  For its part, after Plaintiff's counsel sent copies the confirmations to Defendant's counsel, JPMorgan likewise claims to have no knowledge of the transfers and claims to be unable to identify any account designated as "CHMANEK USDTCM."  Neither RBS nor JPMorgan has been able to identify what that account number is.  Comp. ¶¶ 22-23.

Based on the transfer confirmations provided to it by RBS in 2007 and 2009, Plaintiff TMT Co. believes that it has $10,860,472.42 on deposit at Defendant in an account identified by RBS as "CHMANEK USDTCM" and perhaps one or more other unidentified accounts.  JPMorgan has not denied receiving the transfers from RBS; it simply says it cannot locate the funds or identify the accounts from the information in the confirmations provided by RBS and forwarded to it by Plaintiff's counsel.

Good cause plainly exists for these expedited evidentiary proceedings.  The only information that TMT Co. has about the transfers comes from the written confirmations it received from RBS in 2007 and 2009.  Since neither RBS nor JPMorgan is able to locate the funds or even identify the account or accounts into which TMT Co.'s funds were transferred based upon the written confirmations provided by RBS, the only feasible way to resolve this perplexing mystery is to obtain additional information from RBS, which initiated and implemented the transfers on its own initiative. Even if that information will not prove conclusively where TMT Co.'s money is located, it is a necessary starting point in the process of obtaining relief.  For that reason, obtaining the evidence from witnesses abroad will be useful

---

[2] TMT Co. believes that the account designation "CHMANEK USDTCM" is an acronym for Chase Manhattan Equities U.S. Dollar Treasury Cash Management and refers to a treasury cash management account, apparently a discretionary account managed only by a small number of senior investment banking officers at JPMorgan. Comp. ¶ 8.

even if it is not determinative of the outcome of this case. In addition, obtaining the evidence from RBS and Mr. Blowes[3] early in the proceedings undoubtedly will aid JPMorgan in locating TMT Co.'s funds, which is a necessary step for TMT Co. to be made whole for its loss.

Importantly, while conferring with counsel for Defendant conferred regarding TMT Co.'s desire to obtain evidence on an expedited basis, Plaintiff's counsel explained that such expedited proceedings may promote an early resolution of the litigation or obviate the need for costly and time-consuming litigation that is otherwise nearly certain to ensue. After that discussion, Defendant's counsel advised counsel for Plaintiff that JPMorgan would take no position on TMT Co.'s request for expedited evidentiary proceedings.

Because RBS and Mr. Blowes are in England, for TMT Co. to obtain evidence it is necessary for the Court to issue a Letter of Request under the Hague Convention, to which the United Kingdom and the United States are both parties. A proposed Letter of Request in blank[4] is attached hereto as Exhibit D. The Letter of Request is limited to issues that are certain to be important in the disposition of the action:

    a)   creation and management of the TMTCO Account at RBS;

    b)   deposits into the TMTCO Account by TMT Co.;

    c)   instruction from TMT Co. to make any of the four transfers to JPMorgan discussed above;

    d)   documents detailing all the transfers in question;

    e)   information about the account designated as "CHMANEK USDTCM" and RBS's dealings in that account;

---

[3] When TMT Co. opened the TMTCO Account in 2007, Mr. Blowes was the RBS Services Team Leader assigned to TMT Co. Based upon publicly available information, Mr. Blowes is currently an Anti-Money Laundering Support Manager for RBS. *See* https://uk.linkedin.com/in/robert-blowes-672096130.

[4] The Court must specify the date on which it grants this Motion on page 6 of the Letter of Request and must sign and date page 14 of the Letter of Request.

    f)    information about any other account at JPMorgan into which TMT Co.'s funds may have been transferred; and

    g)    the relationship between RBS and JPMorgan.

The evidence sought from RBS and Mr. Blowes by this expedited process is unquestionably pertinent to the resolution of the dispute between TMT Co. and JPMorgan.

    For all these foregoing reasons, the Court should grant Plaintiff's unopposed motion and issue a Letter of Request, in the form attached hereto as Exhibit A, for Plaintiff to obtain relevant evidence under the Hague Convention from RBS and Mr. Blowes in England as soon as practicable and before the conference required by Rule 26(f) takes place.

Dated: January 10, 2017

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

By:    /s Mark C. Rifkin
Mark C. Rifkin
Benjamin Y. Kaufman
270 Madison Ave.
10th Floor
New York, NY 10016
(212) 545-4600

*Attorneys for Plaintiff*

791096