USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/17/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TMT CO. LTD.,

    Plaintiff,

vs,

JPMORGAN CHASE BANK,

    Defendant

Civ. No. 1:16-cv-08757-VM

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE

The United States District Court for Southern District of New York presents its compliments to the Senior Master of the Queen's Bench Division High Court of Justice and requests assistance in obtaining evidence to be used in a civil proceeding now pending before this Court.

The District Court requests that the Senior Master approve the Plaintiffs' nomination of a practicing Barrister or such other qualified person as the Court deems fit, to act as Examiner for the purpose of obtaining evidence for trial from two witnesses,

This request is made pursuant to, and in conformity with The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, to which both the United States and the United Kingdom are a party.

The Court considers that the evidence sought is directly relevant to the issues in dispute and is not discovery within the meaning of Article 23 of The Hague Evidence Convention, that is, discovery intended to lead to relevant evidence for trial. It is expected, based on existing timetables, that the United States District Court for the Southern District of New York will schedule trial on or after December 1, 2017.

The particulars of this Hague Evidence Request are as follows:

1

| | | |
|---|---|---|
| 1. | **Sender:** | Honorable Victor Marrero<br>United States District Judge,<br>United States District Court Southern District of New York |
| 2. | **Central Authority of the Requested State:** | COMPETENT AUTHORITY FOR ENGLAND AND WALES<br>Senior Master<br>Queen's Bench Division<br>ROYAL COURTS OF JUSTICE<br>Strand<br>London WC2A 2LL<br>UNITED KINGDOM<br><br>**On behalf of:**<br><br>THE CENTRAL AUTHORITY FOR THE UNITED KINGDOM<br><br>Her Majesty's Principal Secretary of State for Foreign Affairs<br><br>FOREIGN AND COMMONWEALTH OFFICE<br><br>King Charles Street<br><br>London SW1A 2AH, England,<br><br>UNITED KINGDOM |
| 3. | **Person to whom the executed request is to be returned:** | Plaintiff's Legal Representative in the UK:<br><br>Steven Loble, Esq.<br>W Legal Limited<br>47 Red Lion Street<br>London<br>WC1R 4PF<br>Ref. SFL/<br><br>On behalf of:<br><br>Honorable Victor Marrero<br>United States District<br>Judge,<br>United States District Court Southern District of New York |

2

4. In conformity with Article 3 of the Convention, the undersigned applicant has the honor to submit the following requests:

| | | |
|---|---|---|
| 5a. | Requesting Judicial Authority: | Honorable Victor Marrero<br>United States District<br>United States District Court Southern District of New York |
| 5b. | To the competent authority of: | THE UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND |

6. Names and addresses of the parties and their representatives:

    a. **Plaintiffs:** TMT Co. Limited
16th Floor, 245 Dunhua South Road, Section 1,
Da-an District, Taipai
10489 Taiwan

**Represented in the U.S. by:**

Mark C. Rifkin, Esq.
Benjamin Y. Kaufman, Esq.
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, NY 10016
United States of America

**Represented in England by:**

Steven Loble, Esq.
W Legal Limited
47 Red Lion Street
London
WC1R 4PF
Ref. SFL/

    b. **Defendants:** **JPMorgan Chase**
**Defendant**

**Represented in the U.S. by:**

James J. Coster, Esq.
Satterlee Stephens LLP
230 Park Avenue
New York, NY 10169

**Parties**

The Plaintiff is a privately company incorporated in Taiwan and whose address is 16th Floor, 245 Dunhua South Road, Section 1, Da-an District, Taipai 10489 Taiwan.

The Defendant is a publicly-traded major financial institution whose global headquarters is at 270 Park Avenue New York, NY 10017.

7. **Nature and purpose of the proceedings and summary of the facts:**

<u>Plaintiff's Allegations</u>

1. On or about July 6, 2007, TMT opened an account with non-party Royal Bank of Scotland ("RBS"), which RBS designated with the Account Identifier/Number TMTCO-USD1 (the "TMTCO Account").

2. In 2007, Robert Blowes was employed by RBS as a Services Team Leader and was assigned to TMT Co.'s account as Service Team Leader. Based upon publicly available information, Mr. Blowes is still employed by RBS as an Anti-Money Laundering Support Manager.

3. Prior to July 12, 2007, TMT deposited more than $5,000,000.00 into the TMTCO Account. On or about July 12, 2007, the sum of $5,000,000.00 was transferred from the TMTCO Account to Defendant JPMC by RBS via wire transfer for the benefit of TMT. As reflected in the confirmation of the transfer provide to TMT by RBS, the funds were transferred into "Beneficiary account number: CHMANEK USDTCM" and was purportedly "Ordered by: TMT CO LTD." This is "the First CHMANEK USDTCM Payment."

4. Upon information and belief, the account designation CHMANEK USDTCM, an acronym for Chase Manhattan Equities U.S. Dollar Treasury Cash Management, refers to a treasury cash management account, apparently, a discretionary account managed only by a small number of senior investment banking officers at JPMC. TMT did not cause the account

designated as CHMANEK USDTCM to be opened or created, and did not know about the account before TMT's money was transferred into the account.

5. Thereafter, TMT deposited another $250,000 into the TMTCO Account. On or about September 19, 2007, the sum of $250,000.00 was transferred to Defendant JPMC by non-party RBS via wire transfer for the benefit of TMT. As reflected in the confirmation of the transfer provide to TMT by RBS, the funds were transferred into "Beneficiary account number: CHMANEK USDTCM" and was purportedly "Ordered by: TMT CO LTD." This is "the Second CHMANEK USDTCM Payment."

6. The two payments of $5,000,000 and $250,000 are referred to collectively as "the CHMANEK USDTCM Payments." TMT Co. did not initiate, request, or authorize the CHMANEK USDTCM Payments.

7. TMT Co. thereafter made additional deposits into the TMTCO Account. On or about February 9, 2009, RBS notified TMT Co. that it transferred the sum of $1,995,587.37 from the TMTCO Account to its own account at JPMorgan via Royworld Express, a proprietary online banking portal operated by RBS similar to Western Union ("the First Royworld Payment). On or about February 12, 2009, RBS notified TMT Co. that it transferred the sum of $1,458,302.67 from the TMTCO Account to its own account at JPMorgan via Royworld Express ("the Second Royworld Payment). . On or about March 9, 2009, RBS notified TMT Co. that it transferred the sum of $1,456,592.90 from the TMTCO Account to its own account at JPMorgan via Royworld Express ("the Third Royworld Payment). . Finally, on or about March 24, 2009, RBS RBS notified TMT Co. that it transferred the sum of $699,989.48 from the TMTCO Account to its own account at JPMorgan via Royworld Express ("the Fourth Royworld Payment).

8. The four payments described above are referred to collectively as the "Royworld Transfers." TMT Co. did not initiate, request, or authorize the Royworld Transfers.

9. Through counsel, TMT has made demand upon JPMC for return of the funds it holds. In the alternative, TMT has demanded that if the funds are no longer held by JPMC, that JPMC provide TMT with information as to the funds' disposition, including when the funds were transferred, at whose direction they were transferred, and to whom they were transferred.

10. In addition, through its counsel, TMT has requested copies of any account statements related to the funds held for TMT by Defendant JPMC since January 1, 2007.

11. Nevertheless, despite repeated requests, Defendant JPMC has wrongfully failed to do so. Despite being provided with copies of confirmations for the transfer of funds, JPMC incredibly claims that it is unable to locate any incoming wires for the amounts and dates reflected in the wire transfer confirmations for the July 12, 2007 and September 19, 2007 transfers and cannot identify the accounts based upon the information provided in the confirmations.

12. Instead, JPMC suggested that TMT inquire of RBS as to the disposition of the funds. However, the funds were transferred from RBS to JPMC and are not in RBS's possession.

13. In any event, through counsel, TMT has requested information from RBS relating to the wire transfers including the identification number or numbers for the accounts into which the funds were transferred, the written instructions from TMT regarding the transfers and documents relating to the transfers. TMT has also asked for any information in RBS's possession relating to the identity and nature of the account designated "CHMANEK USDTCM." While, RBS has responded to TMT's inquiry, it has not provided any of the requested information.

14. The unjustified failure of JPMC to return the funds to TMT or provide TMT with information relating to the funds is wrongful, wanton and willful.

**The Defendant's Position**

No Answer has yet been filed.

## STAGE OF THE PROCEEDINGS

This action was commenced by the filing of a *Complaint* by the Plaintiff on November 10, 2016. On January 17, 2017, the District Court granted Plaintiff's request to obtain evidence on an expedited basis. Based upon current timetables, trial is expected to take place no sooner than December 1, 2017.

## THE WITNESSES

1. Mr. Blowes was at the relevant time employed by RBS as a Services Team Leader and was assigned to TMT Co.'s account as Service Team Leader. Based upon publicly available information, Mr. Blowes is still employed by RBS as an Anti-Money Laundering Support Manager.

2. Plaintiff believes in good faith that Mr. Blowes authorized and directed the CHMANEK USDTCM Payments and the Royworld Transfers.

3. If Mr. Blowes did not authorize or direct the CHMANEK USDTCM Payments or the Royworld Transfers, Plaintiff believes in good faith that, by virtue of his position at RBS, Mr. Blowes has personal knowledge of the CHMANEK USDTCM Payments, the Royworld Transfers, the nature of the CHMANEK USDTCM Account and any other account(s) into which those payments and transfers were made, and the nature of the business relationship between JPMC and RBS.

4. Other individuals currently employed by RBS, including its Head of Global Banking and Markets Shipping Business Centre in London, have personal knowledge of the CHMANEK USDTCM Payments, the Royworld Transfers, the nature of the CHMANEK USDTCM Account and any other account(s) into which those payments and transfers were made, and the nature of the business relationship between JPMC and RBS.

## LIST OF SUBJECTS FOR ORAL EXAMINATION

The District Court of New York therefore respectfully requests that the witnesses be ordered to attend for examination to give evidence about the following matters:

1. The opening of the account by TMT Co. at RBS, which RBS designated with the Account Identifier/Number TMTCO-USD1 (the "TMTCO Account").

2. The mandate for and signatories on the TMTCO Account.

3. The deposits by the Plaintiff into the TMTCO Account between the opening of the account and the end of 2009.

4. The operation of the account, including day to day dealings with the Plaintiff and the individuals who gave instructions on its behalf.

5. The day to day dealings with the Defendant relating to the Plaintiff's affairs.

6. The instruction from the Plaintiff to make the either of the CHMANEK USDTCM Payments.

7. The instruction from the Plaintiff to make any of the Royworld Transfers.

8. The nature of the CHMANEK USDTCM Account and any other account(s) into which any or all of the CHMANEK USDTCM Payments and Royworld Transfers were made.

9. The decision to use Royworld Express for the Royworld Transfers.

10. The relationship between the Defendant and Royal Bank of Scotland as it pertains to the Plaintiff's business.

11. The personnel at RBS who dealt with the TMTCO Account or the CHMANEK USDTCM Account.

12. The internal RBS authorization of the CHMANEK USDTCM Payments and Royworld Transfers.

13. The acknowledgement of the receipt by JP Morgan Chase Bank of the payment of the CHMANEK USDTCM Payments.

14. The acknowledgment of receipt by JP Morgan Chase Bank of the Royworld Transfers.

15. The attempts made by RBS to recover the CHMANEK USDTCM Payments and the Royworld Transfers paid to the Defendant from the TMTCO Account.

16. RBS's dealings in connection with the CHMANEK USDTCM Account and any other account(s) into which any or all of the CHMANEK USDTCM Payments and Royworld Transfers were made.

17. RBS's dealings with the Plaintiff after the Payments were made.

18. RBS's dealings with the Defendant in relation to the Plaintiff's business after the Payments were made.

## LIST OF DOCUMENTS SOUGHT FOR PRODUCTION

The United States District Court for Southern District of New York also requests that Royal Bank of Scotland by the RBS Head of Global Banking and Markets in London or some other person duly authorized produce the following documents, described below, which are in Royal Bank of Scotland's custody, possession or control, and to answer questions upon oral deposition regarding the authenticity, purpose and meaning of the documents so produced:

1. The account opening forms for the TMTCO Account.

2. The mandate for and signatories on the TMTCO Account.

3. The signature cards for the TMTCO Account.

4. The deposits by the Plaintiff into the TMTCO Account between the opening of the account and the end of 2009.

5. The operation of the account, including day to day dealings with the Plaintiff and the individuals who gave instructions on its behalf.

6. The day to day dealings with the Defendant relating to the Plaintiff's affairs.

7. The instruction from the Plaintiff to make the First CHMANEK USDTCM Payment.

8. The instruction from the Plaintiff to make the Second CHMANEK USDTCM Payment.

9

9. The instruction from the Plaintiff to make the First Royworld Transfer.

10. The instruction from the Plaintiff to make the Second Royworld Transfer.

11. The instruction from the Plaintiff to make the Third Royworld Transfer.

12. The instruction from the Plaintiff to make the Fourth Royworld Transfer.

13. In relation, to the two CHMANEK USDTCM Payments; and the four Royworld Transfers:

    (i) the screen captures from SWIFT and Royworld of the outgoing and incoming transfers for each of the following:

    (ii) the instruction or initiation of each transfer;

    (iii) acknowledgement or confirmation of receipt by RBS of the instruction or initiation of each transfer;

    (iv) initiation of each transfer by RBS;

    (v) confirmation of initiation of each transfer by RBS;

    (vi) Internal RBS authorization for the making of each transfer;

    (vii) confirmation that each transfer was made; and

    (viii) confirmation that each transfer was completed.

14. In relation, to the two CHMANEK USDTCM Payments; and the four Royworld Transfers:

    (i) the computer print-outs from SWIFT and Royworld of the outgoing and incoming transfers for each of the following:

    (ii) the instruction or initiation of each transfer;

    (iii) acknowledgement or confirmation of receipt by RBS of the instruction or initiation of each transfer;

    (iv) initiation of each transfer by RBS;

    (v) confirmation of initiation of each transfer by RBS;

    (vi) Internal RBS authorization for the making of each transfer;

    (vii) confirmation that each transfer was made; and

    (viii) confirmation that each transfer was completed.

15. The acknowledgement of the receipt by the Defendant of the payment of USD5,000,000 from the TMTCO Account in favour of the Defendant on 12 July 2007.

16. The acknowledgement of the receipt by the Defendant of the payment of USD250,000 from the TMTCO Account in favor of the Defendant on 29 September 2007.

17. The acknowledgement of the receipt by the Defendant of the payment of $1,995,587 from the TMTCO Account in favor of the Defendant on 9 February 2007.

18. The acknowledgement of the receipt by the Defendant of the payment of $1,458,302.67 from the TMTCO Account in favor of the Defendant on 12 February 2007

19. The acknowledgement of the receipt by the Defendant of the payment of $1,456,592.90 from the TMTCO Account in favor of the Defendant on 9 March 2007.

20. The acknowledgement of the receipt by the Defendant of the payment of $699,989.48 from the TMTCO Account in favor of the Defendant on 24 March 2007.

21. Monthly Statements for the TMTCO Account from opening until the end of 2009.

22. Periodic Statements from the JPMorgan Chase Bank to RBS relating to the CHMANEK USDTCM account from July 2007 to date.

[The agreement of all the above witnesses to give evidence in this matter has been sought but they have elected not to provide any such voluntary agreement and have indicated to Plaintiffs' legal representatives that they are only prepared to give evidence pursuant to a formal Request in conformity with The Hague Evidence Convention.]

For the reasons set forth above, the United States District Court for the District of believes that the witnesses (whose contact details are given below) will be able to provide evidence directly relevant to the main issues between the parties and without which the ends of justice could not be properly met. The United States District Court for the District of believes that this information is not available from any other source.

| | |
|---|---|
| 8. Evidence to be obtained: | Plaintiff seeks testimony and documents from employees of the company listed below. |
| 9. Identity and addresses of persons to be examined: | Robert Blowes<br>RBS<br>280 Bishopsgate<br>London, England EC2M 4RB<br><br>Head of RBS Global Banking and Markets Shipping Business Centre<br>1 Princes Street<br>London, England EC2 R8 PB |
| 10. Subject matter about which the witnesses will be examined: | Please see list of subjects itemized above. |
| 11. Documents or other property to be inspected: | Please see list of documents itemized above. |
| 12. Any requirement that the evidence be given on oath or affirmation and any specific form to be used: | None. |
| 13. Special methods or procedures to be followed: | |

The United States District Court for Southern District of New York respectfully requests assistance in appointing an English Examiner for the purpose of compelling oral testimony for use at trial from English witnesses. The United States District Court for the District of further requests that Plaintiffs' counsel, Steven Loble, a solicitor with the London firm of W Legal Limited, arrange for the nomination of an Examiner in this matter. This Request is made pursuant to, and in conformity with, Article 18 of The Hague Evidence Convention of March 18, 1970; the Evidence (Proceedings in Other Jurisdictions) Act 1975, the Rules of the United States District Court for the District of Court Order 70; and Rule 34, paragraphs 6 and 8 of the Civil Procedure Rules.

12

The United States District Court for Southern District of New York further requests that the parties' representatives or their designees, a court reporter and a videographer be permitted to be present during the examination; that the representatives or designees be permitted to examine and cross-examine the witnesses directly; and that a court reporter and a videographer be permitted to make a verbatim record of the proceedings.

| | |
|---|---|
| **14. Request for notification of the times and place for the execution of the Request and identity of the person to be notified:** | It is requested that testimony be taken at such place, date or time as ordered by the Senior Master and/or as otherwise scheduled by the representatives of the Plaintiffs and/or as otherwise agreed to by the witnesses and the respective representatives of the Parties.<br><br>Notice thereof should be made to Plaintiffs' U.K. designee:<br><br>Steven Loble, Esq.<br>W Legal Limited<br>47 Red Lion Street<br>London<br>WC1R 4PF<br>Ref. SFL/ |
| **15. Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request:** | None. |
| **16. Specification of privilege or duty to refuse to give evidence under the laws of the State of origin:** | Under the laws of the United States, a party has a privilege to refuse to give evidence if the evidence discloses a confidential communication between that party and an attorney for that party that was made for the purpose of obtaining legal advice.<br><br>Parties also enjoy limited privileges on other grounds not relevant here such as communications between physician and patient, psychotherapist and patient, husband and wife, or clergy and penitent.<br><br>US law also recognizes a privilege against criminal self-incrimination.<br><br>Outside the strict area of privilege, certain |

13

                                                                                  limited immunities are available that may place restrictions on the giving of evidence, such as the limited protection of documents created as the work product of attorneys during or in anticipation of litigation.

17. **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by:**

18. **Date of Request:**                                         January 17, 2017

19. **Signature and seal of the Requesting Authority:**         Honorable Judge, Victor Marrero
                                                                                  The United States District Court for Southern District of New York

       This Court expresses its appreciation to you for your courtesy and assistance in this matter and states that, pursuant to the authority of 28 U.S.C. § 1782, it stands ready and willing to do the same for you in a similar matter when required.

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

MARK C. RIFKIN
212-545-4762
FAX 212-686-0114
rifkin@whafh.com

FOUNDED 1888
270 MADISON AVENUE
NEW YORK, NY 10016
212-545-4600

750 B STREET · SUITE 2770
SAN DIEGO, CA 92101

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
70 WEST MADISON STREET, SUITE 1400
CHICAGO, IL 60602

January 17, 2017

VIA TELECOPIER (212-805-6382)

Hon. Victor Marrero
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:   *TMT Co. Ltd. v. JPMorgan Chase Bank*,
           Case No. 16-cv-08757-VM

Dear Judge Marrero:

We write as requested by Your Honor's law clerk. I enclose a conformed copy of the Letter of Request, inserting today's date in the blanks on pages 7 and 14. The Letter of Request is ready for Your Honor's signature.

Thank you for Your Honor's prompt consideration of the motion to expedite. As always, we are available at the Court's convenience should Your Honor have any further questions.

                                    Respectfully yours,

                                    Mark C. Rifkin

Enclosure.

cc:    James J. Coster, Esquire (via email w/ enclosure)